RAILWAY EXPRESS AGENCY, INC., *v.* VIRGINIA.

No. 38.   Argued October 15, 1958.—Decided February 24, 1959.

*Thomas B. Gay* argued the cause for appellant. With him on the brief were *Robert J. Fletcher, William H. Waldrop, Jr.* and *H. Merrill Pasco.*

*Frederick T. Gray,* Special Assistant Attorney General of Virginia, argued the cause for appellee. With him on the brief was *Albertis S. Harrison, Jr.,* Attorney General.

MR. JUSTICE CLARK delivered the opinion of the Court.

Once again the effort of the Commonwealth of Virginia to levy a tax against express agencies is before us for decision. Nearly five years ago this Court struck down as a "privilege tax" violative of the Commerce Clause of the Federal Constitution its tax statute under which was laid an assessment on appellant's "privilege of doing business" in Virginia.[1] *Railway Express Agency* v. *Virginia,* 347 U. S. 359 (1954). Subsequently the Virginia General Assembly enacted the Act here involved levying a "franchise tax" on express companies, measured by gross receipts from operations within Virginia, in lieu of all other property taxes on intangibles and rolling stock. In due course an assessment against appellant was made thereunder for 1956. Both the State Corporation Com-

---

[1] Va. Code, 1950, § 58–547.

mission, which has jurisdiction of such levies in Virginia, and the Commonwealth's highest court have upheld the validity of the new law as well as the assessment made thereunder, *Railway Express Agency* v. *Virginia,* 199 Va. 589, 100 S. E. 2d 785. Appellant levels a dual attack, the first being that the statute is a "privilege tax" and like the former one violates the Commerce Clause; or, secondly, that in any event the assessment under it is calculated in such a manner as to deprive appellant of its property without due process of law in violation of the Fourteenth Amendment. On appeal we noted probable jurisdiction, 356 U. S. 929 (1958). We believe that Virginia has eliminated the Commerce Clause objections sustained against its former tax law. While the tax is in lieu of other property taxes which Virginia can legally assess and should be their just equivalent in amount, *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 696 (1895), we will not inquire into the exactitudes of the formula where appellant has not shown it to be so baseless as to violate due process. *Nashville, C. & St. L. R.* v. *Browning,* 310 U. S. 362 (1940). The failure of the appellant to furnish, in its return, certain necessary information showing its gross receipts allocated to Virginia, called for under the statute and requested by the Commonwealth, has left the correct amount unobtainable by the latter except by some method of approximation and places the burden on appellant to come forward with affirmative evidence of extraterritorial assessment.

BACKGROUND AND ACTIVITY OF APPELLANT IN VIRGINIA.

Since the opinion in the former appeal, *supra,* at pp. 360–361, relates the factual details concerning appellant's operations in Virginia, we believe it sufficient to say here that it is a Delaware corporation, owned by 68 of the railroads of the United States. It is engaged in both an inter-

state and intrastate express business throughout the Nation, save in Virginia, where a constitutional provision bars foreign corporations from possessing or exercising any of the powers or functions of public service corporations. There it operates a wholly owned subsidiary, a Virginia corporation, which carries on its intrastate functions within the Commonwealth. Appellant's Virginia business is thus of an exclusively interstate nature. Through exclusive contract arrangements with 177 of the railroads of the Nation appellant is the sole operator of express facilities on their lines, including Virginia. It pays therefor all of its net income, thus achieving one of the stated purposes of the agreement—that appellant ". . . shall have no net taxable income." In turn, appellant's Virginia subsidiary pays all of its net income over to it for the privilege of exercising appellant's exclusive contracts in intrastate business in the Commonwealth. Appellant owns property within Virginia, its return filed with the Commonwealth for tax purposes showing $120,110.70 in cash on deposit; automotive equipment and trucks $262,719.63; real estate of the value of $32,850; and office equipment listed at $42,884.83.

### VIRGINIA'S GENERAL TAXING SYSTEM.

The Commonwealth has a comprehensive tax structure covering public service corporations.[2] It empowers local governments to levy ad valorem taxes on the "dead" value of all real property and tangible personal property, except rolling stock, located within their respective jurisdictions. This leaves free for state purposes taxes on rolling stock, money and other intangibles, and the "live" or "going-concern" value of the business in Virginia. We are concerned only with the state tax which is levied on

---

[2] See Va. Const., § 170; and Va. Code, 1950, §§ 58-9, 58-10.

the franchises of express companies. It provides[3] in pertinent part that

> "[e]ach express company . . . shall . . . pay to the State a franchise tax which shall be in lieu of taxes upon all of its other intangible property and in lieu of property taxes on its rolling stock."

The franchise tax is measured by "the gross receipts derived from operations within" Virginia which is deemed

> "to be all receipts on business beginning and ending within this State and all receipts derived from the transportation within this State of express transported through, into, or out of this State."

The State Corporation Commission is directed, after notice, to assess the franchise tax on the basis of a report to be filed by the company involved or, in case of its failure to file such report, the Commission is to base the assessment "upon the best and most reliable information that it can procure."

### The Issues Under the Statute.

First, let us clear away the dead underbrush of the old law. The new tax is not denominated a license tax laid on the "privilege of doing business in Virginia"; nor is it "in addition to the property tax" levied against appellant, nor a condition precedent to its engaging in interstate commerce in the Commonwealth. The General Assembly has made crystal-clear that the tax is now a franchise tax laid on the intangible property of appellant, and is levied "in lieu of taxes upon all of its other intangible property and . . . rolling stock." The measure of the tax is on gross receipts, fairly apportioned, and, as to appellant, is laid only on those "derived from the transportation

---

[3] Va. Code, 1950, § 58–546, *et seq.*, as amended by Va. Acts 1956, c. 612.

within this State of express transported through, into, or out of this State."

Appellant concedes that the Commerce Clause does not prohibit the States from levying a tax on property owned by a concern doing an interstate business. It agrees that it has rolling stock and money in the Commonwealth, as well as intangibles, including its exclusive express privileges with the railroads. It readily admits that the latter agreements are "valuable contract rights" and contribute a principal element to the "going concern value" of its business in the Commonwealth. Subsuming that a valid tax levy might be levied on such intangibles, it argues, however, that the incidence of the tax is on appellant's privilege to carry on an exclusively interstate business in Virginia rather than on intangible property. Our sole question under the Commerce Clause is whether the tax in practical operation is on property or on privilege.

The due process issue is entangled with appellant's failure to file, in its report, data covering its gross receipts allocated to Virginia.[4] Failing to do this the State Cor-

---

[4] In its return, appellant stated that it was "unable" to ascertain its gross receipts from express transported "through, into or out of" the Commonwealth. The record contains testimony to this effect by one of appellant's officers. The record also shows, from one of appellant's own exhibits, that since 1931 the tax year in question is the only year in which appellant has been "unable" to report this information. From 1931 to 1953, appellant managed to find a way of compiling or computing and reporting such data, and in only 7 of these 23 years did the Commonwealth disagree with appellant's figures. Due to the downfall of the old tax in *Railway Express Agency* v. *Virginia, supra,* there was no reporting requirement for 1954 and 1955. Under the new tax, for 1956, appellant made no attempt to present evidence to show what reductions should be made in the Commission's figures, nor did it explore the possibility of an agreement about it as it apparently had in prior years. Cf. *Cohan* v. *Commissioner of Internal Revenue* (C. A. 2d Cir. 1930), 39 F. 2d 540, 543–544. Instead, it relied completely upon its claim that the tax was unconstitutional.

poration Commission used a formula which in effect ascribed to Virginia the proportion of such receipts as the mileage of carriers within Virginia bore to the total national mileage of the same lines.[5]  Appellant contends that the assessment made in this manner is violative of due process and that the resulting amount of tax levied was confiscatory.

In any event, appellant argues, the "in lieu" provisions of the law, as applied to it, are invalid.  Admitting that it had cash, intangibles and rolling stock that were subject to a state tax but which suffered none because of the "in lieu" provisions of this law, it contends that the tax assessed under the latter was no just equivalent of the "in lieu" taxes but was greatly in excess thereof and violative of due process.

### Validity of the Law Under the Commerce Clause.

As we have pointed out, the statute levies a franchise tax in lieu of all taxes on *"other* intangible property" and rolling stock.  (Emphasis added.)   This leaves no room for doubt that the General Assembly intended to levy a tax upon appellant's intangibles.   Moreover, supporting this interpretation, both the State Commission and the Supreme Court of Appeals have construed it as a tax on appellant's intangible property and "going concern" value. This trinity of agreement by three state agencies, though not conclusive, has great weight in our determination of the natural and reasonable effect of the statute.   *Railway Express* v. *Virginia, supra; Spector Motor Service* v. *O'Connor,* 340 U. S. 602 (1951); *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450 (1918); *United States Express*

---

[5] Actually, the amounts paid to such carriers for Virginia traffic were ascertained by that method.   Since the carrier payments represent only net receipts, the Virginia gross receipts were determined by applying to the Virginia carrier payments the ratio that its total gross receipts bore to its total carrier payments.

*Co.* v. *Minnesota,* 223 U. S. 335, 346 (1912). This is not to say that a legislature may effect a validation of a tax, otherwise unconstitutional, by merely changing its descriptive words. *Lawrence* v. *State Tax Commission,* 286 U. S. 276, 280 (1932); *Galveston, H. & San Antonio R. Co.* v. *Texas,* 210 U. S. 217, 227 (1908). One must comprehend, however, the difference between the use of magic words or labels validating an otherwise invalid tax and their use to disable an otherwise constitutional levy. The latter this Court has said may sometimes be done. *Railway Express Agency* v. *Virginia, supra,* at 364; *Spector Motor Service* v. *O'Connor, supra,* at 607; *McLeod* v. *Dilworth Co.,* 322 U. S. 327, 330 (1944).

Appellant buttresses its argument with reasoning that a tax on "going concern" value just cannot be measured by fairly apportioned gross receipts. While it may be true that gross receipts are not the best measure, it is too late now to question its constitutionality. *Illinois Cent. R. Co.* v. *Minnesota,* 309 U. S. 157 (1940); *Great Northern R. Co.* v. *Minnesota,* 278 U. S. 503 (1929); *Pullman Co.* v. *Richardson,* 261 U. S. 330 (1923); *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450 (1918); *United States Express Co.* v. *Minnesota,* 223 U. S. 335 (1912); *Wisconsin & M. R. Co.* v. *Powers,* 191 U. S. 379 (1903). These decisions are still in good standing on our books. Even on the former appeal this Court used the following language:

> "Of course, we have held, and it is but common sense to hold, that a physical asset may fluctuate in value according to the income it can be made to produce. A live horse is worth more than a dead one, though the physical object may be the same, and a smooth-going automobile is worth more than an unassembled collection of all its parts. The physical facilities used in carrying on a prosperous business are worth more than the same assets in

bankruptcy liquidation or on sale by the sheriff. No one denies the right of the State, when assessing tangible property, to use any fair formula which will give effect to the intangible factors which influence real values. *Adams Express Co.* v. *Ohio State Auditor,*[6] 166 U. S. 185. But Virginia has not done this." 347 U. S., at 364.

We feel that Virginia has now done just that.

We are not convinced by appellant's "boot strap" argument that the express privileges it enjoys have no value to it because all of its net income by agreement with the railroads is paid over to them. We believe it more accurate to rely on its admission that "No one would question the fact that Appellant's exclusive express privileges on the railroads are valuable contract rights." This concession, when taken in the light of the expressed purpose of appellant that the payment of its net income for the use of the express privileges was solely to make certain "that the Express Company shall have no net taxable income," exposes the frivolous nature of this contention. We are not so blinded to business realities as to permit such a manipulation of the finances of appellant, the railroads' wholly owned subsidiary, to frustrate the Commonwealth in its effort to collect an otherwise fair tax.

Nor is there any substance to the contention that since Virginia could not prohibit appellant from engaging in its exclusively interstate business, it therefore may not tax "good will" or "going concern" value which is built up thereby. We need only cite some of the cases of this Court holding to the contrary: *Great Northern R. Co.* v. *Minnesota,* 278 U. S. 503 (1929); *Pullman Co.* v. *Richardson,* 261 U. S. 330 (1923); *Cudahy Packing Co.* v. *Min-*

---

[6] Parenthetically, it might be noted that the *Adams* case involved a "going concern" valuation of $488,265 as compared to a "dead" valuation of property in the amount of $28,438. 165 U. S. 194, 237.

*nesota,* 246 U. S. 450 (1918); *United States Express Co.* v. *Minnesota,* 223 U. S. 335 (1912); *Adams Express Co.* v. *Ohio,* 165 U. S. 194 (rehearing 166 U. S. 185 (1897)); *Western Union Telegraph Co.* v. *Taggart,* 163 U. S. 1 (1896); *Cleveland, C., C. & St. L. R. Co.* v. *Backus,* 154 U. S. 439 (1894).

VALIDITY OF THE TAX UNDER THE DUE PROCESS CLAUSE.

In view of the fact that appellant failed to file the required information as to its gross receipts, thus placing an almost insurmountable burden on the Commonwealth to ascertain them, it is necessary that appellant make an affirmative showing that the mileage method used by Virginia is so palpably unreasonable that it violates due process. This it has failed to do. Appellant rests its argument not on facts and figures covering its actual gross income in Virginia but on comparative statistics based on tangible assets. It points out that during the taxable year the value of its tangible assets in Virginia ($475,065) was only 0.6% of its total assets ($79,700,426), while the amount of gross receipts apportioned to Virginia by the State Corporation Commission was 1.7% ($6,499,519) of its total gross receipts ($387,241,764).

The difference in the two percentages, appellant contends, must represent intangible values on which Virginia cannot operate because located outside of its jurisdiction. This syllogism does not take into account the facts of business life. Tangible assets in Virginia may produce much more income than like assets elsewhere. Death Valley Scotty generated much less gross from his desert sightseeing wagon than did his counterpart in Central Park. The utter fallacy of using tangible assets as the test of going-concern value here is demonstrated by the fact that appellant's tangible assets in Virginia depend entirely on whether it elects to retain title to tangible property or place it in the name of its subsidiary,

the Virginia company. By placing them in the Virginia company it could thus, on a tangible asset formula, escape all tax on its intangibles.

There is nothing in the record even to indicate that the tangible assets that appellant carries in its own name in Virginia did not actually generate the amount of gross receipts attributed to it by the State Corporation Commission. In this connection, we note that 1.9% of appellant's total contract mileage was located there. Even where taxpayers have attempted to show through evidence, as this appellant has not, that a given apportionment formula effected an appropriation of more than that to which the State was entitled, this Court has required " 'clear and cogent evidence' that it results in extraterritorial values being taxed." *Butler Bros.* v. *McColgan,* 315 U. S. 501, 507 (1942); *Norfolk & Western R. Co.* v. *North Carolina,* 297 U. S. 682, 688 (1936); cf. *Bass, Ratcliff & Gretton, Ltd.,* v. *Tax Comm'n,* 266 U. S. 271, 282–284 (1924). As this Court said in *Nashville, C. & St. L. R.* v. *Browning,* 310 U. S. 362, 365–366 (1940):

> "In basing its apportionment on mileage, the Tennessee Commission adopted a familiar and frequently sanctioned formula. *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18; *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217; *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Backus,* 154 U. S. 421; *Branson* v. *Bush,* 251 U. S. 182. See 2 Cooley on Taxation, pp. 1660–64. Its asserted inapplicability to the particular situation is rested on petitioner's evidence as to the comparative revenue-producing capacity of its lines in and out of Tennessee. But both the Commission and the Supreme Court of the state thought that this evidence, however weighty, was insufficient to displace the relevance of the formula. *In a matter where exactness is concededly unobtainable and the feel of judgment so important a factor, we must be on guard lest*

*unwittingly we displace the tax officials' judgment with our own.* Certainly we cannot say that the combined judgment of Commission, Board, and state courts is baseless." (Emphasis added.)

Appellant's final argument is to the effect that the tax in question, in the amount of $139,739.66, is "no just equivalent" of the tax "in lieu of which" it was levied, and therefore violates the Due Process Clause. This argument is based upon a false premise which can be quickly disposed of. Appellant states that under Virginia's system of segregation of property for state and local taxation the only property which the Commonwealth had the power to tax was cash on hand and on deposit and appellant's rolling stock, which, under the old rates, would have yielded a tax of $679.77. Appellant is clearly in error. As we read the Virginia statutes, and as they were construed below, the Commonwealth (as contrasted with the local) government also had the power to tax the "going concern" value of *all* of appellant's Virginia property, as well as its other intangible property rights such as its valuable express privileges. Thus, the new tax is not only in lieu of the previous tax on rolling stock and cash on hand, but also reaches intangible rights of great value which since *Railway Express, supra,* had escaped taxation altogether.

It follows from what we have said that the tax is valid, and the judgment below is therefore

*Affirmed.*

Mr. Justice Frankfurter concurs in the result.

Mr. Justice Harlan, concurring.

I share the reservations of Mr. Justice Brennan as to the propriety of considering the tax described in the opinion of the Court as a property tax. I find myself unable, however, to distinguish in any constitutional

sense the "in lieu" tax here involved from similar levies the validity of which has been sustained as applied to interstate enterprises in the line of cases cited in the Court's opinion, and therefore join the opinion.

MR. JUSTICE BRENNAN, concurring.

While I join the opinion and judgment of the Court, I must admit to some reservations whether the tax at bar can fairly be thought of as a property tax. The discussion of the Court in this case's predecessor, *Railway Express Agency, Inc., v. Virginia,* 347 U. S. 359, 364–367, cast serious doubt on the propriety of viewing Virginia's former tax as a property tax, and I share that doubt. The only modification in the mathematical demonstration of the prior decision necessitated by the revision of the tax statute is brought about by the new statute's provision that the tax is in lieu of other taxes on the appellant's intangible property and rolling stock. In practical effect, this means that payment of this $139,739.66 tax is "in lieu" of a $1/5\%$ tax on $120,110.70 of cash, amounting to $240.22; a tax, amounting to $427.56, on the value, apportioned to the State, of the appellant's refrigerator cars; and a $2\frac{1}{2}\%$ tax on its trucks,* valued at $262,719, amounting to $6,567.98. These taxes, in lieu of which the $139,739.66 tax at bar is payable, aggregate $7,235.76. It seems to me doubtful whether this makes a significant

---

*The State informs us that the appellant's trucks have been ruled to be "rolling stock" and therefore shielded by the "in lieu" provision of the new statute. While the Virginia Code does not in terms set forth a rate of taxation for the rolling stock of express companies, the rates provided for the rolling stock of railway and of freight car companies are $2\frac{1}{2}\%$ ad valorem. Va. Code §§ 58–515, 58–560. This rate would appear appropriate for exploring the equivalence of this "in lieu" tax to a corresponding property tax, and in fact the rate, as established by the latter section, has been used before the "in lieu" provision as a basis for the taxation of appellant's refrigerator cars.

alteration in the demonstration the Court made on the prior appeal with respect to the status as a property tax of the gross receipts tax on express companies. While the tax may be a rough equivalent of some sort of property tax that Virginia might conceivably levy on express companies, I do not see that it has been made clear that it bears any equivalence to any sort of property tax that she in fact levies on other sorts of businesses or has in fact previously levied on express companies. Cf. *Pullman Co.* v. *Richardson,* 261 U. S. 330, 339. On the other hand, I cannot deny that this Court has, in decisions cited by the Court's opinion, frequently admitted gross receipts taxes to the characterization of "property taxes" in situations where their equivalence with any actual property tax was somewhat tenuous. See, *e. g., Illinois Central R. Co.* v. *Minnesota,* 309 U. S. 157.

To me, the more realistic way of viewing the tax and evaluating its constitutional validity is to take it as what it is in substance, a levy on gross receipts fairly apportionable to the taxing State. Virginia has a comprehensive scheme of state income and gross receipts taxes on business corporations, with net income taxes the standard in the case of ordinary businesses and gross receipts taxes in the case of most categories of utility or "public service" corporations. The gross receipts taxing structure does not single out this interstate transportation company, or discriminate against it, but rather requires it only to pay its share, at a tax rate comparable to the rates on the gross receipts of other categories of public service corporations, and in fact lower than those on many important ones. To restrict the gross receipts subject to the tax to an amount representing that part of appellant's interstate movements which takes place within the State, the State has employed an apportionment formula. That formula is not on its face unfair or discriminatory toward interstate commerce or indicative of an imposition on out-of-state

activities, and the opinion of the Court amply demonstrates that this appellant cannot maintain a challenge to the details of its application here. The label of the tax as a "privilege" or "license" tax, proscribed by this case's predecessor, has been eliminated, as the Court's opinion shows. This Court's decisions sustain the application of a fairly apportioned general gross receipts tax to an interstate transportation company. *Canton R. Co.* v. *Rogan,* 340 U. S. 511, 515–516; *Central Greyhound Lines, Inc.,* v. *Mealey,* 334 U. S. 653, 663–664. Cf. *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 256. In my view, the most compelling reason for affirming the judgment of the Supreme Court of Appeals of Virginia is the application of the principles of these cases here.

MR. JUSTICE WHITTAKER, with whom MR. JUSTICE STEWART joins, dissenting.

I cannot agree. Let me very briefly put the case in perspective, as I see it. Taxation of the property of appellant's Virginia subsidiary, which does an intrastate business in Virginia, is not at all involved here. The Court properly observes the fact that "Appellant's Virginia business is . . . of an exclusively interstate nature." In the year involved it owned in Virginia tangible real and personal property which was taxed by Virginia under other statutes and is not involved in this case. Virginia also claims that appellant had intangible property in Virginia. It is upon those intangibles, so claimed to have been present in the State, that Virginia sought to lay its "franchise tax," said by it to be a "property tax" *measured* by appellant's gross receipts, allocable to Virginia, from "exclusively" interstate commerce. Admittedly appellant had a bank account and some "rolling stock" in Virginia, upon which, doubtless, Virginia validly could lay an ad valorem tax. But the dispute is over the following. Virginia claims that appellant should be deemed to have

had in Virginia, and subject to the taxing statute here involved, substantially that percentage of the value of its national "good will," and of its exclusive express carriage contract with the railroads, which the ratio of the mileage of carriers which it uses in interstate commerce in Virginia bears to the total mileage of the same carriers which it uses everywhere in such commerce. Appellant contends that Virginia's claim in these respects is unconstitutional. Which of them is right? I think it is appellant. I think so for two reasons. First, the exclusive carriage contract which appellant has with the railroads requires it, as the Court observes, to pay "all of its net income" to the railroads. Therefore, as a matter of both fact and law, that *contract* can have no dollar value to *appellant,* distinguished from the railroads, to be taxed to it anywhere. Second, appellant's "good will," if any, does not consist of anything localized in Virginia, but inheres solely in its "exclusively" interstate business—a business that Virginia cannot reach or regulate, by direct taxation or otherwise, because it is prohibited from doing so by the Commerce Clause of the Constitution, Art. I, § 8, cl. 3. My views on that subject are fully stated in my dissenting opinion in No. 12, *Northwestern States Portland Cement Co.* v. *Minnesota,* and No. 33, *Williams* v. *Stockham Valves & Fittings, Inc., post,* at p. 477. I would therefore reverse the judgment of the Supreme Court of Appeals of Virginia.