THORNAL, Justice.
Appellant Green, who was defendant below, seeks reversal of a declaratory decree enjoining him as State Comptroller from collecting a portion of the gross receipts tax described in Section 203.01, Florida Statutes, F.S.A.
We must determine whether the subject tax as sought to be collected by the State Comptroller constitutes an unlawful burden on interstate commerce allegedly conducted by appellee Western Union.
The facts are not in conflict. As is well known, appellee Western Union engages in the business of transmitting messages by telegraph between points within the State of Florida, as well as between points in Florida and points outside of this state, and vice versa. The instant dispute arises out of the collection of the subject tax from gross receipts allegedly obtained from transmission of messages between points within the State of Florida. The problem arises out of Western Union’s method of operation. When a message is received in a Western Union office in Florida it is transmitted over its lines across the Florida-Georgia border to a reperforator center in Atlanta, Georgia, thence back over its transmission lines to a point of delivery in Florida. Although the message originates and terminates at points entirely within the State, it is transmitted in the above described interstate travel as a result of a system established by Western Union in order to improve its efficiency. The rates-charged for the messages are collected in accordance with certain rate zone schedules based upon the mileage between the points within the State of Florida constituting the origin and delivery points of the message. The record contains some indication that a part of the cost of establishing and operating the reperforator system is allocated to the rate base upon which Western Union’s Florida rates are fixed by the Florida Railroad and Public Utilities Commission. Insisting that the transaction is entirely intrastate the appellant Comptroller *715 has demanded payment of the gross receipts tax described in Section 203.01, supra, calculated on the entire gross receipts of Western Union derived from messages transmitted between Florida points but in the manner described above. Western Union has insisted that the tax should be apportioned on a line mileage basis. The telegraph company claims that its operation is interstate for tax purposes and that it should not be required to pay a tax except in the proportion which the mileage of its lines between Florida points and the Georgia border bears to the total mileage between Florida point of origin, thence to Atlanta and back to Florida point of delivery.
Finally, Western Union instituted this litigation as a proceeding for a declaratory decree. It requested the Chancellor to declare that its suggested method of apportionment is the proper one; that its operation is interstate commerce insofar as the collection of this tax is concerned, and that the effort of the Comptroller to collect the tax on its entire gross receipts from messages transmitted between points in Florida constitutes an unlawful burden upon interstate commerce in violation of the Constitution of the United States. The Chancellor agreed with Western Union and held in effect that the method of apportionment on basis of transmission line mileage was the proper basis on which to apportion the gross revenues of the appellee for purposes of paying the subject tax. Appellant Green, as Comptroller, asks us to reverse this decree.
Appellant contends in substance that the method of operation carried on by Western Union is actually intrastate as contrasted to interstate commerce, but that even if it be the latter, the tax is collectible on the entire gross receipts obtained from the transmission of messages between points completely within the State of Florida regardless of the transmission route.
Appellee Western Union contends that its operation is interstate and that its advocated method of apportionment of the tax on the line mileage basis is the only one which will enable the Comptroller to collect the tax in a manner comporting with the requirements of the Federal Constitution.
The statute involved is Section 203.01, Florida Statutes, F.S.A., which in material parts reads as follows:
“203.01. Public service corporations, tax upon gross receipts. Every person * * * receiving payment for * * * the sending of telegrams and telegraph messages, shall annually, on or before the fifteenth day of March, report to the comptroller of the state, * * * the total amount of gross receipts derived from business done within this state, or between points within this state, for the preceding calendar year, and, at the same time, shall pay into the state treasury the sum of one dollar and fifty cents upon each one hundred dollars of such gross receipts * * *
As we proceed we should have in mind the provisions of Article I, Section 8, Clause 3, Constitution of the United States, which reads as follows:
“To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;”
It was early held in connection with the quoted provision of the Federal Constitution that the power conveyed to the Congress to regulate commerce between the states implicitly precluded the exercise of any power by the several states which would constitute an undue burden upon or interference with commerce between states. Regulation has taken many forms, including taxation. It is not every form of state regulation or taxation which bears upon or which is related to interstate commerce that will fall by virtue of Federal Constitutional provisions. It is only state action which unduly or unreasonably interferes with commerce between the states that meets the condemnation of the Federal or- *716 game law. In construing the Commerce Clause in its application to particular cases involving state action it becomes necessary to determine whether state regulation discriminates against interstate commerce or whether it is exclusory or prohibitive or unreasonably restrictive to the extent that it unduly and unfairly impedes the flow of commerce between the states. Armstrong v. City of Tampa, Fla.1959, 118 So.2d 195, and cases there cited.
Reverting to the decree of the Chancellor we note that he grounded his judgment entirely on the decision of the Supreme Court of the United States in Central Greyhound Lines v. Mealey, 334 U.S. 653, 68 S.Ct. 1260, 92 L.Ed. 1633.
In so doing the Chancellor construed the Commerce Clause as prohibiting the proposed action of the Comptroller in the instant case and as approving the recommended apportionment formula advanced by appellee Western Union. We think that Mealey does not have this conclusive effect.
In Mealey, the State of New York undertook to collect a tax based on the gross receipts from transportation by buses between points within the state but over routes utilizing the highways of Pennsylvania and New Jersey. It appeared that the gross receipts of the bus lines were based on the mileage traveled between the two intrastate points over the circuitous interstate route. In the instant case so far as this record reveals, the rate charged by Western Union is based on the direct airline mileage between the Florida points. Be this as it may, Mealey simply held that to be collectible, the New York tax must be fairly apportioned to the business done within the state by some fair method of apportionment. The Supreme Court of the United States held that on the record there presented the tax could be constitutionally sustained if collected on receipts from transportation apportioned as to mileage within the state, there being no question as to the fairness of the suggested method of apportionment.
It appears to us that the key to the ultimate solution of our instant problem is to determine the source of the gross receipts derived from the services rendered. This is so because gross receipts constitute the base upon which the tax is collected. If any part of the gross receipts result from the operation outside of the State of Florida, then such part cannot be included in the total in order to arrive at the tax due. On the other hand, if the gross receipts from the intra-Florida messages are not collected on a mileage rate including the Georgia line mileage, then it would appear to us that for purposes of this tax the gross receipts from intra-Florida messages would be reduced only in the proportion that the cost of the reperforator system in Georgia enters into the rate base for fixing the Florida transmission rate.
We think little could be accomplished by an effort to circumvent the rather obvious fact that the transmission of these messages is in fact interstate commerce. The electrical impulses which carry the messages over the lines of Western Union actually cross the state line twice. We think it clear that they move in interstate commerce and we think it unjustifiable to attempt to indulge in some fiction to the contrary. Central Greyhound Line v. Mealey, supra. In this regard we do not overlook the provisions of Title 47 U.S.C.A. § 153 (e) (3) as amended in 1954. We are satisfied that for regulatory purposes the Congress has conveyed to state commissions the responsibility of regulating telegraph company transmissions such as those involved in the instant case. By conveying this power to regulate, however, we are not convinced that the Congress has relinquished to the states any power to burden interstate commerce unduly or in an ex-clusory fashion by the exercise of the taxing power.
Conceding that the instant operation constitutes interstate commerce, we harken to more recent cases which in effect hold *717 that the Commerce Clause does not protect interstate commerce against the responsibility of bearing its just share of the cost of intrastate benefits and services which it enjoys. Northwestern States Portland Cement Co. v. State of Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, 67 A.L.R. 2d 1292; Railway Express Agency v. Commonwealth of Virginia, 358 U.S. 434, 79 S.Ct. 411, 3 L.Ed.2d 450.
We are consistent with a long line of decisions of the Supreme Court of the United States when we hold that a state gross receipts tax, which is apportionable to and is collected on revenues derived from intrastate aspects of an interstate operation are not violative of the Commerce Clause. Ratterman v. Western Union, Tel. Co., 127 U.S. 411, 8 S.Ct. 1127, 32 L.Ed. 229; Hanley v. Kansas City S. R. Co., 187 U.S. 617, 23 S.Ct. 214, 47 L.Ed. 333; Northwestern Portland Cement Co. v. State of Minnesota; supra; Railway Express Agency v. Com. of Virginia, supra. See also annotation in 67 A.L.R.2d 1322, page 1351, et seq.
The tax imposed by the Florida statute in this case is apportionable and the statute itself specifies the basis of apportionment, to wit: “the total amount of gross receipts derived from business done within this state, or between points within tnis state * * Regardless of this the ap-pellee Western Union insists that the Comptroller has not properly apportioned the tax because in their view it can properly be apportioned only on the basis of the relative line mileage in Georgia and Florida. The fallacy in Western Union’s argument, so far as this present record reveals, simply is that there is nothing here to show that the gross receipts for transmission of the intra-Florida messages are in any manner related to the line mileage traveled by the message. It is not shown'that the rate charged is on line mileage basis. On the contrary, from all that appears, the rate is based entirely on the airline distance between Florida points and the Georgia lineage contributes nothing in the way of producing the Florida gross receipts. Consequently, it is apparent that there has not been demonstrated any logical relationship between the transmission line mileage and the gross receipts in order to establish a fair and proper basis for apportionment.
Actually, the matter of apportionment of tax obligations such as this is originally to be administratively developed in accord with prescribed legislative standards. If a taxpayer is dissatisfied with the administrative decision it is necessary that it make some affirmative showing that the method employed by the state is unreasonable, in that it violates due process or contravenes the Commerce Clause. Certainly it has the responsibility of furnishing adequate records reflecting the sources of its income or gross receipts sufficient to enable the collecting agency to make a fair and just apportionment. Railway Express Agency v. Com. of Virginia, supra. In the instant case Western Union has proceeded to announce its own method of apportionment which, as we have seen, bears no logical relationship to its gross receipts so far as the current record is concerned. Up to now it has failed to demonstrate in any fashion that the gross receipts which the Comptroller seeks to use as a base are in any manner derived from or acquired because of the part of the operation outside of Florida. If the gross receipts are not in any fashion attributable to or the product of the interstate aspect of the operation then under the decided cases they may be used as a rate basis for the collection of the instant tax.
We here simply hold that the subject tax may and should be apportioned when it is demonstrated that the gross receipts derived from intra-Florida messages are in some manner increased because of or influenced as to amount as a result of the Georgia reperforator system. It is our present holding that the appellee has failed to demonstrate in any respect that the gross receipts from the Florida messages have been so increased as a result of the inter *718 state operation. When a tax is measured by gross receipts we cannot envision an unlawful burden unless the interstate aspect of the operation contributes to the production of the gross receipts. When it does the tax cannot be collected on .the portion of the receipts produced by the operation beyond the borders of the taxing state. The decision relied upon by the Chancellor, Central Greyhound Line v. Mealey, supra, does not in our view conclusively support the position of the appellee nor does it conclude the case against the appellant, for the reasons which we have pointed out above.
Finding as we do that the appellee has failed to demonstrate its entitlement to the protection of the Commerce Clause under the circumstances reflected by the record, the decree of the Chancellor will have to be reversed and the cause remanded for further proceedings consistent herewith including the right of the parties to amend their pleadings or offer further evidence within the proper discretion of the Chancellor.
It is so ordered.
THOMAS, C. J., and TERRELL, HOBSON, ROBERTS, DREW and O’CONNELL, JJ., concur.