CONNECTICUT LIMOUSINE SERVICE, INC. *v.* JOHN L. SULLIVAN, TAX COMMISSIONER

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 138629

EDWARD DiLAURO, JR. *v.* JOHN L. SULLIVAN, TAX COMMISSIONER

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 138631

CONNECTICUT LIMOUSINE SERVICE, INC. *v.* JOHN L. SULLIVAN, TAX COMMISSIONER

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 139495

Memorandum filed December 7, 1966[1]

*Day, Berry & Howard,* of Hartford, for the plaintiffs.

*Walter T. Faulkner* and *Ralph G. Murphy,* assistant attorneys general, for the defendant.

TEDESCO, J. The three above-entitled cases were tried together before the Superior Court in the county of Hartford since they touch upon the same question of fact and law. The plaintiff Edward DiLauro, Jr., conducted a business known as New Haven-Fairfield Airport Service and subsequently incorporated that business and named it Connecticut Limousine Service, Inc. These parties are the plaintiffs in these actions for either a claim for a refund of a sales tax or an appeal from the assessment of a sales tax on the purchase of motor vehicles used in the transportation of passengers from points in Connecticut directly to the New York and New Jersey airports. The plaintiffs purchased motor vehicles through duly licensed motor vehicle dealers in Connecticut. The plaintiffs paid the sales tax in cases Nos. 138629 and 138631, but the state is claiming a sales tax in case No. 139495, concerning the purchase of motor vehicles used by the plaintiffs. In connection with the purchase order of the motor vehicles of the dealers, the plaintiffs instructed the

---

[1] An appeal to the Supreme Court of Connecticut was withdrawn.

dealers to direct the manufacturers in Michigan to send the vehicles to Ft. Smith, Arkansas, to be subjected to "stretching," which is a process by which the familiar elongated airport vehicle is made longer by several feet. The stretching process consists of adding lengths of parts to the body and internal works of a car so that more passengers can be accommodated than in a normal pleasure vehicle.

After the vehicles were stretched, they were driven to New Haven and arrangements were made for the inspection of the vehicles by the Connecticut public utilities commission, and registrations for the vehicles were obtained from the Connecticut department of motor vehicles. The vehicles were garaged in New Haven, and the office of the plaintiffs was located in New Haven. Subsequently, the United States interstate commerce commission issued to the plaintiffs a certificate of public convenience and necessity to use vehicles only for the interstate carrying of passengers and their baggage from various points in Connecticut to airports in New York and New Jersey. There was testimony that none of the passengers were allowed to leave the vehicles within the boundaries of a state. Once a passenger boarded a vehicle, he was transported to either New York or New Jersey. Therefore, the fact that the vehicles were used only for interstate business was firmly established.

The question posed is whether the sales and use tax is payable on these vehicles to the state of Connecticut even though they are used exclusively in interstate business, and whether the imposition of a Connecticut sales tax is a direct imposition on the freedom of commercial flow from one state to another.

Under the commerce clause; U.S. const. art. 1 § 8 cl. 3; the validity of a state tax depends on the con-

sideration of a constitutional policy having a reference to the substantial effects, actual or potential, of the particular tax in suppressing or unduly burdening interstate commerce. Interstate commerce is not totally immune from state taxation. Interstate business must pay its way. The commerce clause does not relieve those engaged in interstate commerce even though the tax increases the cost of doing interstate business.

A reading of the cases does not, however, readily answer the question involved in this case. There are many decisions which state that a state tax cannot be imposed on business which is involved in interstate commerce.

The state may impose property taxes on property having a situs within its territory, though the property is used in interstate commerce. The courts have even held that foreign-owned railroad rolling stock in a state may be taxed although it is employed in interstate commerce. Note, 49 A.L.R. 1099, 1112. In *Pullman's Palace Car Co.* v. *Twombly,* 29 F. 658, the court said a state tax is imposed for the reason that the state has a duty to protect the property (sleeping car), the state must provide protection, this protection costs money, and the tax is the owner's proper payment therefor. The commerce clause was not violated by the imposition of a state gross income tax where books were bound and sent across state lines to purchasers who were selling out of state for delivery out of state. *Gross Income Tax Division* v. *W. B. Conkey Co.,* 228 Ind. 352, cert. denied, 340 U.S. 941; note, 67 A.L.R.2d 1322, 1350. The mere knowledge of the seller in the taxing state of an intended out of state destination was said not to convert an intrastate transaction to an interstate transaction. A state tax is not forbidden by the commerce clause. A business must carry its fair share

of the cost of the state government for the return of the business it derives from the state. The usual complaint is multiple taxation, but that is not the claim here. *Northwestern States Portland Cement Co.* v. *Minnesota,* 358 U.S. 450.

It is well to pause and note that the *Conkey* and the *Portland Cement* cases, supra, are very similar to the plaintiffs' case here. A tax on a corporation for the sale of railroad ties purchased in one state and sold to a railroad company for work to be done on them in another state was allowed. The ties were properly taxed because they were sold, delivered, and loaded on railroad cars to go to another state. *Dept. of Treasury* v. *Wood Preserving Corporation,* 313 U.S. 62; note, 115 A.L.R. 952.

A Nevada corporation manufactured in Utah pipes to be used on specific out-of-state jobs. Delivery was made and title passed in Utah, and then the material was hauled out of state. The court said that since the title passed and delivery to the purchaser took place in Utah, the commerce clause did not prevent Utah from collecting a tax. The court said that a state may levy and collect a sales tax. *State Tax Commission* v. *Pacific States Cast Iron Pipe Co.,* 372 U.S. 605.

In *American Oil Co.* v. *Neill,* 86 Idaho 7, 24, the court said that "[t]he inhibition against imposition of a tax upon interstate commerce is not as to the tax itself, but only when the tax becomes an undue burden upon interstate commerce, or when it discriminates against out of state, as compared to the intrastate vendor." It is interesting to note the result in *Spector Motor Service, Inc.* v. *O'Connor,* 340 U.S. 602, which concerns the state of Connecticut in that it imposed a tax—on the franchise of a foreign corporation for the privilege of doing busi-

ness in Connecticut—on the net income of business done in that state. The court said that the tax imposed is not one for the use of the highway, or in lieu of a property tax, or a fee for inspection, or a tax on sales and use. The court held that as concerns a corporation which is exclusively in interstate commerce the tax imposed on *Spector* was invalid under the commerce clause. It is to be well noted that the court would not have declared this tax invalid had it come under one of the other taxes listed above or under the sales and use tax. The court said that whether a state may validly make interstate commerce pay its way depends first of all upon the constitutional channel through which it attempts to do so. Other taxes may be levied, but if the tax is on the privilege of doing business of interstate commerce it will be and ought to be struck down.

It might be well to enumerate several instances where the courts of our nation have allowed a tax on businesses which are involved in interstate commerce: Tax on rolling stock; *Uniform Refrigerator Transit Co.* v. *Lynch,* 18 Utah 378; tax on refrigerator cars used in interstate business; *Hall* v. *American Refrigerator Transit Co.,* 24 Colo. 291; foreign-owned rolling stock; *Union Tank Car Co.* v. *Day,* 156 La. 1071; common carriers such as vehicles of transportation in interchange of interstate commerce; *Marye* v. *Baltimore & O.R. Co.,* 127 U.S. 117; railroad cars used in interstate commerce; *General American Tank Car Corporation* v. *Day,* 270 U.S. 367; pullman car in property tax; *Pullman Co.* v. *Richardson,* 261 U.S. 330; railroad company with business confined on an interstate bridge; *St. Louis Ry. Co.* v. *Hagerman,* 256 U.S. 314; movables (tanks) of a foreign corporation regularly and habitually employed therein as taxable even though devoted to interstate commerce; *Union Tank Line Co.* v. *Wright,* 249 U.S. 275; railway cars; *St. Louis*

*S.W. Ry. Co.* v. *Arkansas,* 235 U.S. 350; tax on sleepers, rails, etc., as a tax on property and not on the privilege of doing business; *Fargo* v. *Hart,* 193 U.S. 490; trucks used in interstate commerce. *Railway Express* v. *Virginia,* 358 U.S. 434.

The court concludes after reading these cases and especially *Railway Express* v. *Virginia,* supra, that even though the plaintiffs' vehicles were used exclusively in interstate commerce they are taxable under the Education, Welfare and Public Health Tax Act of the state of Connecticut. General Statutes, c. 219. In 51 Am. Jur., Taxation, § 815, the court said that in *Marye* v. *Baltimore & O.R. Co.,* supra, rolling stock is taxable in a state even though used in interstate commerce and whether or not it is owned by a resident or a nonresident, if the rolling stock is domiciled and physically located within the owner's state.

The court wishes to pause a moment to comment on the case cited in the plaintiffs' brief, *Freeman* v. *Hewit,* 329 U.S. 249. The tax in that case was a gross receipts tax which was capable of being levied by two states. Mr. Justice Frankfurter wrote the opinion in which the tax was declared to be against the interest of the commerce clause. The main reason for the invalidity of the tax was that it was capable of being duplicated by other states. Justice Frankfurter said (p. 256): "The immunities implicit in the Commerce Clause and the potential taxing power of a state can hardly be made to depend . . . on the shifting incidence of the varying tax laws of the various States at a particular moment." The *Freeman* case is distinguished from the present case in that there was no question of the capability of duplication of the tax by other states and there was no question as to the collection of the tax by another state. Therefore, the court

finds that the plaintiffs are not entitled to any refunds, and also finds that the tax assessed on the automobiles which has not been paid is due and payable by the plaintiffs.

Judgments may enter for the defendant.