[No. 48698-1.   En Banc.   February 10, 1983.]

NORTHWEST NATURAL GAS COMPANY, *Appellant,* v. CLARK COUNTY, ET AL, *Respondents.*

*John H. Binns, Jr., Kristin H. Kerth,* and *Perkins, Coie, Stone, Olsen & Williams* (*Leonard A. Girard* and *Stoel, Rives, Boley, Fraser & Wyse,* of counsel), for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *William B. Collins, Assistant,* for respondent State.

UTTER, J.—This appeal presents a challenge to a valua-

tion of property for tax purposes by the State Department of Revenue (Department). Northwest Natural Gas Company (Northwest) challenges the Department's valuation for each of the years 1975 through 1979 on three grounds: (1) that the Department failed to comply with statutory requirements; (2) that even if the Department did comply, its valuations are excessive; and (3) that the Department's valuation formula as applied violates the interstate commerce and/or due process clauses of the federal constitution. We find Northwest's contentions to be without merit and consequently affirm the Superior Court's dismissal of Northwest's claim.

Northwest operates a natural gas distribution service in the states of Washington and Oregon. As required by statute, the Department annually values Northwest's operating property within Washington as a whole and within each county. The valuation process has three stages. First, the Department determines the total value of the entire interstate system based on a weighted average of three figures: (1) historical cost less depreciation; (2) capitalized value of net operating income; and (3) net value of stock and debt. Second, the Department determines what percentage of the total system value should be allocated to Washington. *See* RCW 84.12.300. Finally, once the Washington share of total system value has been determined, the Department must allocate it among the various counties in which Northwest does business. *See* RCW 84.12.350.

The focus of Northwest's challenge in this action is the second step of the valuation process, the allocation of system value to Washington. Northwest concedes the accuracy of the Department's computations of total system value and apparently also concedes that the apportionment between counties was proper.

The allocation of total system value to Washington is accomplished by a formula based on three variables. These are historical cost, gross revenue, and volume of gas sold. A factor is constructed for each of these variables by taking the ratio of the amount attributable to Washington and the

total amount; for example, the historical cost factor is calculated by dividing the historical cost of all property located in Washington by the historical cost of all system property. Each factor is then assigned a percentage weight (the three weights totaling 100 percent), based on the Department's confidence in the factor, and multiplied by its weight. The resulting products are then summed to produce an overall allocation factor which is multiplied by total system value to produce the system value attributable to Washington.[1]

Northwest claims that the application of this allocation formula to its property violated both statutory and constitutional requirements and significantly overvalued its Washington property. We reject this claim.

I

The apportionment of an interstate utility's total system value is governed by RCW 84.12.300. That provision states in part:

> In apportioning such system value to the state, the department of revenue shall consider relative costs, relative reproduction cost, relative future prospects and relative track mileage and the distribution of terminal properties within and without the state and such other matters and things as the department may deem pertinent.
>
> The Department may also take into consideration the actual cost, cost of reproduction new, and cost of reproduction new less depreciation, earning capacity and future prospects of the property, located within the state and all other matters and things deemed pertinent by the department of revenue.

Northwest argues that the word "shall" in this section should be construed as mandatory and that the Department's failure to include relative reproduction cost and relative future prospects in its allocation formula therefore

---

[1]This formula is actually used to allocate only the value of distribution and storage property. The value of "other" property is allocated in direct proportion to historical cost alone.

violates the section's requirements.

The word "shall" need not always be construed as mandatory. While such a construction is the general rule (*see, e.g., Ballasiotes v. Gardner,* 97 Wn.2d 191, 195, 642 P.2d 397 (1982)), this general rule is subject to exception where a contrary legislative intent is indicated (*Niichel v. Lancaster,* 97 Wn.2d 620, 625, 647 P.2d 1021 (1982)). In past cases, the proper construction has been at times a subject of intense debate (*see, e.g., Niichel,* at 628 (Dimmick, J., dissenting)).

In the case at bar, there is no need to decide how the word "shall" in RCW 84.12.300 is to be construed, for we conclude that the Department did consider relative reproduction costs and relative future prospects in apportioning Northwest's total system value. The word "consider" in RCW 84.12.300 does not require direct incorporation of the enumerated factors into the Department's formula. It merely requires that the Department "consider" incorporating those factors. *Adams Cy. v. Northern Pac. Ry.,* 115 F.2d 768, 778 (9th Cir. 1940). The Department did just that. Its expert testified the Department had considered incorporating relative reproduction cost into its allocation formula but did not do so because data was in general not readily available. With respect to relative future prospects, or net income,[2] there was similar testimony. Since data on net income were not readily available, the Department chose gross revenues as a rough proxy. Certainly RCW 84.12.300 does not require the incorporation of factors for which data does not exist or is unavailable.

The Department under any construction of the word "shall" sufficiently considered all of the factors specified in

---

[2]Future prospects as used in RCW 84.12.300 is not defined. The Department's expert testified that the Department construed the term to mean "what a willing buyer can expect from the property", *i.e.,* net income. We defer to this construction in light of the rule that the construction placed upon a statute by the agency charged with its administration is entitled to great weight. *Washington State Nurses Ass'n v. Board of Med. Examiners,* 93 Wn.2d 117, 121, 605 P.2d 1269 (1980).

RCW 84.12.300.

## II

■ Even when statutory requirements are complied with, however, a valuation for purposes of taxation may be judicially reviewed for correctness. While the valuation is presumed correct, this presumption may be overcome by clear, cogent, and convincing evidence. RCW 84.40.0301. Ordinarily, the taxpayer must also show that the overvaluation is "'grossly inequitable and palpably excessive'". *Xerox Corp. v. King Cy.*, 94 Wn.2d 284, 288, 617 P.2d 412 (1980); *Boise Cascade Corp. v. Pierce Cy.*, 84 Wn.2d 667, 672, 529 P.2d 9 (1974). The statute mandates correction of *any* overvaluation, however, when it is made "on a fundamentally wrong basis". *Xerox Corp. v. King Cy., supra* at 290. Thus, a taxpayer who challenges a property valuation for tax purposes must show by clear, cogent and convincing evidence that: (1) there has been an overvaluation; and (2) the overvaluation was either (a) grossly inequitable and palpably excessive or (b) made on a fundamentally wrong basis.

The court below applied this legal standard and found that the Department's valuation was neither grossly inequitable and palpably excessive nor made on a fundamentally wrong basis. Nonetheless, Northwest challenges these findings as unsupported by the evidence.

In such a case, the scope of our review of the lower court's findings must be exceedingly narrow. So long as there exists substantial evidence to support those findings, we must affirm, even though we might have resolved the question differently. *Beeson v. ARCO*, 88 Wn.2d 499, 503, 563 P.2d 822 (1977). This standard of review superimposed upon the requirement that Northwest prove its claim by clear, cogent, and convincing evidence, a burden significantly heavier than preponderance of the evidence (*Bland v. Mentor*, 63 Wn.2d 150, 154, 385 P.2d 727 (1963)), requires extremely limited review.

Initially, Northwest contends that the Department's for-

mula penalizes it for rises in gas costs which it simply passes through to its customers. Since merely passing through such costs does not increase profitability, a mere increase in gas costs should probably not affect valuation for tax purposes. Yet a rise in gas costs does increase gross revenues and this, Northwest argues, will cause a corresponding increase in the Department's allocation factor.

Were it clear to us that an increase in gross revenues resulting from an increase in gas costs led inexorably to an increase in the allocation factor as calculated by the Department, it could be argued with more force that the Department's allocation formula was fundamentally wrong. It must be recalled, however, that gross revenues enter the Department's formula only in the form of the ratio of Washington gross revenues to total gross revenues. An increase in gas costs will increase both the numerator and the denominator of this ratio and the net effect on the ratio as a whole is hence uncertain. While a mathematical analysis of the net effect is beyond the scope of this opinion, and the expertise of this court, Northwest has produced no evidence and pointed to nothing of which we may take judicial notice which indicates that the effect must be to increase the ratio.

Even conceding the validity of Northwest's contention that the Department's allocation formula should incorporate a net incomes ratio, Northwest has not shown that its alternative formula is an accurate proxy. Net income requires the deduction of *all* costs, gas and nongas, from gross revenues. Yet, Northwest's "contribution to earnings" factor entirely ignores nongas costs.

Were nongas costs per unit of gas sold approximately equal in Washington and Oregon, their omission might be relatively inconsequential; however, Northwest has not shown this to be so. Indeed, the record indicates that there is good reason to believe that Northwest's unit nongas costs are significantly lower in Washington than in Oregon. First, more gas per customer is sold in Washington. Northwest's own expert conceded that this would probably reduce costs.

In addition, a higher percentage of Northwest's Washington customers are "interruptible" customers, *i.e.,* customers to whom Northwest can curtail service at any time it chooses. Northwest's treasurer admitted that an absence of such customers would require Northwest to significantly increase its storage capacity. It follows from this admission that storage costs attributable to interruptible customers are less than those attributable to other customers, known as "firm" customers. Though the record is silent on this issue, the potential liability of Northwest toward an interruptible customer is presumably less as well, since it undertakes a more flexible contractual obligation toward such customers. More generally, it is a standard principle of economics that the costs attributable to an interruptible customer are less than those attributable to a firm customer. *See, e.g.,* 1 A. Kahn, *The Economics of Regulation: Principles and Institutions* 95 (1970). Since a greater proportion of Washington customers are interruptible, this provides further reason to suspect that the costs attributable to Washington customers are proportionately less than those attributable to Oregon customers.

The reason why Northwest did not use actual net income is that it was simply not available. Net income cannot be computed absent data on costs. Northwest's own expert conceded that the allocation of operating and certain other costs between states is impossible. This in turn makes it impossible to calculate that part of net income attributable to Washington. Hence no net incomes ratio can be developed and some proxy must be used.

Northwest's and the Department's formulas simply choose different approximations of an ideal which is not itself attainable. We have no means of judging which approximation is more accurate and Northwest has not carried its burden of showing that the Department's valuation was incorrect. It has certainly not shown that the Department's allocation formula was made on a fundamentally wrong basis or was grossly inequitable and palpably excessive. Even were we convinced that Northwest's for-

mula produced more accurate valuations, we have serious doubts whether we could label the Department's formula *fundamentally* wrong or consider the alleged disparity grossly inequitable and palpably excessive. Our review of the record leads us to conclude that there is more than substantial evidence supporting the decision of the lower court.

## III

■ Finally, Northwest claims that the Department's valuation and the resulting taxation by the State exceed constitutional limitations. State taxation of property not within the state violates both the interstate commerce clause and the due process clause. *Norfolk & W. Ry. v. Missouri State Tax Comm'n,* 390 U.S. 317, 325, 19 L. Ed. 2d 1201, 88 S. Ct. 995 (1968). Yet the state may attempt to tax the intangible "going–concern" value, as well as the value of the tangible assets, within the state. *Norfolk & Western,* at 323–24. This is what the State has attempted to do in the present situation by its consideration of revenues and volume sold.

In addition, great leeway is given to the states in their use of valuation schemes. Any formula is permissible as long as it "bear[s] a rational relationship, both on its face and in its application, to property values connected with the taxing State." *Norfolk & Western,* at 325. The party challenging the taxation scheme has the burden of showing by clear and cogent evidence that there exists no such relationship. *Railway Express Agency, Inc. v. Virginia,* 358 U.S. 434, 444, 3 L. Ed. 2d 450, 79 S. Ct. 411 (1959). In addition, any overvaluation must be of a relatively gross nature. *See Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 273, 57 L. Ed. 2d 197, 98 S. Ct. 2340 (1978); *Norfolk & Western,* at 324, 327.

This constitutional standard of review is virtually identical to the statutory standard applied above. Our previous discussion therefore effectively disposes of Northwest's constitutional argument—Northwest has not shown *any*

overvaluation by clear and cogent evidence, let alone a *gross* discrepancy. *Norfolk & Western,* which Northwest contends "clearly parallels" the present case, is distinguishable. There the state's valuation for property tax purposes was more than double the value of property within the state. *Norfolk & Western,* at 321–22. Moreover, there was no evidence that this disparity could in any way be attributed to "going–concern" value. *Norfolk & Western,* at 327–28. In the case at bar, in contrast, Northwest's own valuations were only 20 to 25 percent less than the Department's valuations and there is good reason to suspect that Northwest's approach underestimates the portion of total system value attributable to Washington.

In conclusion, we refuse to invalidate the Department's valuations of Northwest's Washington property. The Department fully complied with statutory requirements and there is substantial evidence to support the lower court's finding that Northwest did not show error by clear, cogent and convincing evidence. This failure of proof also consigns Northwest's constitutional argument to failure.

The judgment is affirmed.

WILLIAMS, C.J., STAFFORD, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.