MONTANA–DAKOTA UTILITIES CO., Northwestern Public Service Company and Otter Tail Power Company, Corporations, Appellees,

v.

SOUTH DAKOTA DEPARTMENT OF REVENUE, Appellant.

No. 13812.

Supreme Court of South Dakota.

Argued April 19, 1983.

Decided Aug. 24, 1983.

Alan D. Dietrich, Northwestern Public Service Co., Huron, for appellees; Warren W. May of May, Adams, Gerdes & Thompson, Pierre, on brief.

John Dewell, Asst. Atty. Gen., Pierre, for appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

WOLLMAN, Justice.

This is an appeal by the South Dakota Department of Revenue (Department) from a judgment reversing decisions of the South Dakota State Board of Equalization and ordering that the assessment of certain unit trains be reduced by 15.77%. We affirm.

Appellees are three utility companies— Northwestern Public Service Company (Northwestern), Otter Tail Power Company (Otter Tail), and Montana-Dakota Utilities Company (MDU). The parties stipulated to the following facts.

The Knife River Coal Mining Company operates a lignite mine at Gascoyne, North Dakota. The primary consumer of lignite from this mine is the Big Stone Power Plant, a lignite fueled electric generating plant located in Grant County, South Dakota, jointly owned and operated by appellees.

The movement of coal from the Knife River mine to the Big Stone plant is accomplished by two unit trains, which are in operation at all times. One train takes coal to the plant and the other brings empty railroad cars back to the mine for loading.

During the tax years in question, the unit trains were operated by the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, which owned the locomotives used to pull the unit train rail cars owned by appellees. There are 346.8 miles of track from Gascoyne, North Dakota, to the Big Stone plant, of which 54.7 miles, or approximately 15.77% of the track, are located within North Dakota, and the remaining 292.1 miles, or approximately 84.23% of the track, are located within South Dakota.

The time table for the unit trains consists of twenty-hour trips between the plant and mine and four-hour periods for both loading and unloading the trains. The only layover is in Aberdeen, South Dakota, where the trains are refueled and the crews changed.

During 1979 and 1980, Department assessed as ad valorem property one hundred percent of the value of the unit trains. During these years North Dakota assessed and levied as ad valorem property tax 15.77% of the value of the unit trains.

Appellees contended, and the circuit court agreed, that Department's assessment of 100% of the value of the unit trains violates the Due Process Clause, U.S. Const. amend XIV, § 1, and the Commerce Clause, U.S. Const. art. I, § 8, cl. 3.

SDCL 10–35–2 provides:

> All property, real and personal, belonging to or held under lease or otherwise by any light or power company, heating company, water company, or gas company as the same is defined in § 10–35–1 and used by it exclusively in the operation of its line or lines in this state, except such as is held under lease and used in such manner as to make it taxable to the owner under the general property tax laws, shall be assessed annually for taxation by the department of revenue, and not otherwise.

Department maintains that pursuant to SDCL 10–35 the assessment of utility company property must be made on a unit basis that encompasses all of the operating property of a utility company used by it in South Dakota in the furnishing or distribution of electricity for public use. Department further maintains that the unit trains are an integral part of the operating property of the Big Stone Power Plant and supports this contention by pointing out that the unit trains are included in the "boiler account" that has been reported to Department.

■ The Commerce Clause does not immunize interstate instrumentalities from all state taxation. *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979); *Braniff Airways, Inc. v. Nebraska State Bd. of Equalization and Assessment,* 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967 (1954). A state may impose a property tax upon its fair share of an interstate transportation enterprise. *Norfolk & Western Ry. Co. v. Missouri State Tax Comm'n,* 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968). A state tax will withstand challenge from the Commerce Clause "when the tax is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state." *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326, 331 (1977).

■ The Commerce Clause is offended, however, by the risk of multiple taxation. *Gwin, White & Prince v. Henneford,* 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272 (1939). As the Supreme Court stated in *Central R.R. Co. of Pa. v. Pennsylvania,* 370 U.S. 607, 614, 82 S.Ct. 1297, 1303, 8 L.Ed.2d 720, 726 (1962):

Since the domiciliary State is precluded from imposing an ad valorem tax on any property to the extent that it *could* be taxed by another State, not merely on such property as *is* subjected to tax elsewhere, the validity of Pennsylvania's tax must be determined by considering whether the facts in the record disclose a possible tax situs in some other jurisdiction. Had the record shown that appellant's cars traveled through other States along fixed and regular routes, even if it were silent with respect to the length of time spent in each nondomiciliary State, it would doubtless follow that the States through which the regular traffic flowed could impose a property tax measured by some fair apportioning formula. (emphasis in original)

Because the risk of multiple taxation exists only if another jurisdiction may consti-

tutionally impose an ad valorem tax, *Central R.R. Co. of Pa., supra,* we turn to the question whether North Dakota may levy a tax on the unit trains.

■ Whether a state tax violates the due process clause is determined by whether the tax has relation to opportunities, benefits, or protection afforded by the taxing state. *Standard Pressed Steel Co. v. Washington Dep't of Revenue,* 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975); *Ott v. Mississippi Valley Barge Line Co.,* 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949); *Wisconsin v. J.C. Penney Co.,* 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940). Although the Constitution will not allow a taxpayer to avoid its domiciliary state's property tax on the full value of its assets merely because during part of the tax year a determinable fraction of its property is absent from the state, the domiciliary state may not constitutionally levy a personal property tax at full value on freight cars habitually employed on fixed routes and regular schedules in a state other than that of the owner's domicile. *Central R.R. Co. of Pa., supra.*

The stipulated facts disclose continuous operation of the unit trains in both North and South Dakota. The four-hour period for loading the trains at the mine in North Dakota is the same amount of time allocated for unloading at the plant in South Dakota. There is nothing in the record to negate the assumption that North Dakota has provided protection, benefits, and opportunities with respect to the 15.77% of the track mileage within its borders. The unit trains are employed on a fixed and regular schedule in North Dakota, and there is sufficient nexus between the property and North Dakota to avoid a constitutional prohibition against that state's imposing a properly apportioned tax upon the trains.

Department contends, however, that the decision in *Ogilvie v. State Bd. of Equalization,* 657 F.2d 204 (8th Cir.1981), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981), precludes North Dakota from taxing the unit trains. In *Ogilvie,* the Court of Appeals for the Eighth Circuit

held that the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. 11503, (4–R Act) prohibited the North Dakota State Board of Equalization from including trade fixtures and personal property in the assessed value of railroad property because of the exemption of personal property of locally assessed businesses from ad valorem property taxation in North Dakota.

■ The record does not indicate, however, that appellees have received a tax refund in North Dakota for the years in question, and we decline to anticipate what the state or federal courts in North Dakota may determine regarding the effect of the 4–R Act upon North Dakota's taxing of the unit trains. Irrespective of the validity under the 4–R Act of the present North Dakota tax on the unit trains, there appears to be no constitutional prohibition against a properly apportioned North Dakota tax on the unit trains.

Inasmuch as the risk of multiple taxation exists, we conclude that Department's assessment of the full value of the unit trains is barred by the holding in *Central R.R. Co. of Pa., supra.* We accordingly affirm the judgment.

FOSHEIM, C.J., and MORGAN, J., concur.

DUNN and HENDERSON, JJ., dissent.

DUNN, Justice (dissenting).

I believe that the majority opinion is in error in its application of the United States Supreme Court decisions to this case.

The majority opinion correctly cites the rule from *Central R.R. Co. of Pa. v. Pennsylvania,* 370 U.S. 607, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962): the domiciliary state may not constitutionally *levy* a personal property tax at *full value* on freight cars habitually employed on fixed routes and regular schedules in a state other than that of the owner's domicile. (Emphasis added.) It is crucial to note that *Central R.R. Co. of Pa.* dealt with a situation in which the state levied its tax on the *full value* of the railroad property.

However, in the present case, the unit trains in question are not being taxed at their full value. First, the trains were assessed on a unit basis under SDCL ch. 10–35. For many, many years the utilities have been happy with the benefits that flow from the assessment of utility property on a unit basis. But now, the utilities want to segregate a portion of the property assessed on the unit basis because such a segregation would result in a lesser tax. The utilities seek to do this even though the unit trains are included in the "boiler account" of the power plant.

Second, South Dakota levied its tax not on the assessed value of the property but on the equalized value of the trains. Pursuant to SDCL 10–6–33, the value of the trains was equalized to 41.2% of their full and true value. SDCL 10–6–33 then provides that the actual tax which is levied is on the equalized value:

> All property shall be assessed at its true and full value in money but not more than sixty percent of such assessed value shall be taken and considered as the taxable value of such property upon which the *levy* shall be made and applied and the taxes computed. (Emphasis added.)

Therefore, the situation presented to us in this case is not controlled by *Central R.R. Co. of Pa.* South Dakota is taxing the utility at only 41.2% of the true value of the trains, not the full value as dealt with by the United States Supreme Court in *Central R.R. Co. of Pa.*

In light of the facts mentioned above, the rule of *Norfolk and Western Ry. v. Missouri State Tax Comm.,* 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968), should apply: a state may impose a property tax on its fair share of an interstate transportation enterprise. Certainly, South Dakota's fair share can include 41.2% of the value of the trains, especially considering the fact that 84.23% of the tracks are located in South Dakota and that the trains are included in the "boiler account" of a power plant located in South Dakota. Even if North Dakota assesses the trains at 15.77% of their value and levies a tax at that value, the total tax

on the trains still does not come up to the full value contemplated in *Central R.R. Co. of Pa.*, since South Dakota levied a tax on only 41.2% of the value. Thus, the tax imposed by the South Dakota Department of Revenue was well within the "fair share" allowed by the United States Supreme Court.

Finally, the North Dakota tax on 15.77% of the value of the railroad cars has now been declared void in *Ogilvie v. State Board of Equalization*, 657 F.2d 204 (8th Cir.1981) *cert. den.* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). Thus, under any conceivable theory, Big Stone has not been subjected to double taxation by the states of North and South Dakota during the *years in question.*

I would reverse and uphold the Department's imposition of tax on the unit trains under SDCL ch. 10–35.

I am authorized to state that Justice HENDERSON joins in this dissent.