WESTERN AIR LINES, INC., a
corporation, et al., Plaintiffs
and Appellants,

v.

HUGHES COUNTY, South Dakota and
its Board of Commissioners, et al.,
Defendants and Appellees.

No. 14560.

Supreme Court of South Dakota.

Argued Oct. 23, 1984.

Decided July 31, 1985.

R.C. Riter and Robert C. Riter, Jr., of Riter, Mayer, Hofer & Riter, Pierre, for plaintiffs and appellants.

John Dewell, Asst. Atty. Gen., Pierre, for defendants and appellees; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

MORGAN, Justice.

The question raised by this appeal is whether 49 U.S.C. § 1513(d) amending the Airport Development Acceleration Act of 1973, preempts SDCL ch. 10–29, Taxation of Airline Flight Property (tax). The appeal involves the various actions of five airlines, Western Air Lines, Republic Airlines, Frontier Airlines, Ozark Air Lines and Continental Airlines (airlines) seeking redress for 1982 taxes assessed by the Department of Revenue of the State of South Dakota (Department) and paid under

protest to the various counties of Brown, Beadle, Davison, Hughes, Pennington, Minnehaha, Codington, and Yankton. It also involves an appeal from the State Board of Equalization's denial of a petition to exempt the airlines' flight property from 1983 taxes. Forty-two cases in all were consolidated by stipulation and order of the trial court below. At the pertinent times, the airlines were authorized to and did transact business in South Dakota as air carriers. The trial court affirmed the Department on the appeal, entered judgment for the counties on the suits for rebate, and dismissed airlines' actions on their merits. Airlines appeal and we affirm.

Prior to 1961, any airline operating in South Dakota was only taxed for property located in the state, for fuel purchased in the state, and for the privilege of landing in the state but aircraft were not taxed. In 1961, Chapter 449 of the Session Laws of 1961, the Airline Flight Property Tax, was enacted. Codified as SDCL ch. 10–29, the tax provided for central assessment by Department of all airline flight property used in South Dakota.[1] The legislation further provided that airline flight property should not be otherwise taxed. SDCL 10–29–2. The assessments are based on the value and use of airline flight property which actually provides service in the state. The three use factors involved in the assessment are set out in SDCL 10–29–10. The revenues realized by the tax are allocated to the airports used by the airline companies and are to be exclusively used for airport purposes, as determined by the local airport governing bodies and approved by the Department of Transportation. SDCL 10–29–15.

The airlines have been paying the tax without protest from its inception or from their entry into the state, whichever comes later, until 1982 when they paid under protest, and suits were commenced for their recovery per SDCL 10–27–2.

1. SDCL 10–29–1(4) provides: "'Flight property' means all aircraft fully equipped ready for flight used in air commerce[.]"

In enacting Chapter 72 of the 1978 Session Laws entitled "An Act to provide for the repeal of personal property tax," the legislature, after classifying and exempting certain personal property described as personal effects, household furnishings, home appliances, and sporting and hobby goods, provided that "[p]ersonal property as defined in [SDCL] 10-4-6 *which is not centrally assessed* is hereby classified for ad valorem tax purposes and is exempt from ad valorem taxation." (Emphasis added.) The Act further provided: "The exemptions created by this Act shall not impair or repeal any tax or fee which heretofore has been authorized to be levied or imposed in lieu of personal property tax." S.D.Sess.L. ch. 72, § 9. These two provisions are now codified as SDCL 10-4-6.1.

In 1982, the United States Congress amended the Airport Development Acceleration Act of 1973. A new section, codified at 49 U.S.C. § 1513(d), generally prohibits burdensome and discriminatory taxation of air carrier transportation property. Specifically, § 1513(d) provides that states may not assess air carrier transportation property at a higher ratio to true market value than the ratio used to assess other commercial and industrial property; or levy or collect an ad valorem property tax on airflight property at a rate in excess of the rate applied to other commercial and industrial property in the same jurisdiction. 49 U.S.C. § 1513(d)(1). The 1982 amendment contains an exception to its preemption of state taxes on airflight property. 49 U.S.C. § 1513(d)(3) provides: "This subsection shall not apply to any in lieu tax which is wholly utilized for airport and aeronautical purposes."

The trial court determined that SDCL ch. 10-29 meets the requirements of 49 U.S.C. § 1513(d)(3), concluding as a matter of law that the tax imposed, being an in lieu tax under the provisions of SDCL 10-4-6.1 used solely for airport and aeronautical purposes, SDCL 10-29-15, does not violate the provisions of 49 U.S.C. § 1513(d) and is an appropriate tax upon the airlines under state and federal law.

The airlines raise two issues on their appeal. First, is the tax imposed by SDCL ch. 10-29 "in lieu" of another valid tax so as to be authorized under 49 U.S.C. § 1513(d)(3)? Second, does the airline flight property tax imposed under SDCL ch. 10-29 discriminate against appellant airlines and is it violative of 49 U.S.C. § 1513(d)(1)?

 The basic issue before us is whether the tax conflicts with § 1513(d) and thus violates the supremacy clause. Our inquiry is based on the assumption that, "absent the clear and manifest intent of Congress, the reserved powers of the States are not superseded by federal legislation." *Lead-Deadwood School Dist. v. Lawrence Cty.*, 334 N.W.2d 24, 25 (S.D. 1983). The full enactment of § 1513(d) reads as follows:

(1) The following acts unreasonably burden and discriminate against interstate commerce and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(A) assess air carrier transportation property at a value that has a higher ratio to the true market value of the air carrier transportation property than the ratio that the assessed value of other commercial and industrial property of the same type in the same assessment jurisdiction has to the true market value of the other commercial and industrial property;

(B) levy or collect a tax on an assessment that may not be made under subparagraph (A) of this paragraph; or

(C) levy or collect an ad valorem property tax on air carrier transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(2) In this subsection—

(A) "assessment" means valuation for a property tax levied by a taxing district;

(B) "assessment jurisdiction" means a geographical area in a State used in determining the assessed value of property for ad valorem taxation;

(C) "air carrier transportation property" means property, as defined by the Civil Aeronautics Board, owned or used by an air carrier providing air transportation;

(D) "commercial and industrial property" means property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy; and

(E) "State" shall include the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States, and political agencies of two or more States.

(3) This subsection shall not apply to any in lieu tax which is wholly utilized for airport and aeronautical purposes.

Obviously, it was not the intent of Congress to preclude all ad valorem taxes on air carriers' property. An ad valorem tax which meets certain balancing requirements in relation to other commercial and industrial property would be acceptable under (d)(1), as would an "in lieu tax" wholly utilized for airport and aeronautical purposes under (d)(3).

Inasmuch as the trial court found the tax to fall within the latter classification, we will review that first. The trial court relied on the history of central assessments of utilities and the provisions of SDCL 10–4–6.1, *supra*, referring to taxes or fees authorized to be levied or imposed in lieu of personal property tax to determine the tax was an "in lieu" tax. With that conclusion, we must disagree.

■ We first define the term "in lieu tax." It is not defined in the statute nor is it a term in common usage. "Lieu tax" means instead of, or, a substitute for, and it is not an additional tax. Black's Law Dictionary 832 (5th Ed. 1979), *citing Lebeck v. State,* 62 Ariz. 171, 156 P.2d 720 (1945). In *Lebeck,* the citizens of Arizona had adopted a constitutional amendment substituting a license tax (lieu tax) on motor vehicles for personal property ad valorem taxes on such vehicles.

■ In the case at bar, however, the tax is not a substitute for an ad valorem personal property tax. It is in fact the first imposition of personal property tax on the airline flight property. It is an additional tax to the personal property taxes theretofore existing; nor does the reference in SDCL 10–4–6.1 to "in lieu" change that obvious fact.

"The name by which a tax is described in the statute is, of course, immaterial. Its character must be determined by its incidents...." *Goodenough v. State,* 328 Mich. 56, 66, 43 N.W.2d 235, 239 (1950), *quoting Dawson v. Kentucky Distilleries Co.,* 255 U.S. 288, 292, 41 S.Ct. 272, 274, 65 L.Ed. 638, 645 (1921).

■ We therefore hold that the trial court erred in determining that the tax was an in lieu tax, but we further hold that the trial judge arrived at the right result of upholding the tax, but for the wrong reason. In our opinion, the tax is a valid imposition under the balancing test previously referred to under § 1513(d)(1).

■ Unlike the provision of (d)(3), the terminology of (d)(1) is clear and unambiguous. Subparagraph (A) essentially prohibits a discriminatory assessment ratio to true market value as between air carrier property and other commercial and industrial property. Subparagraph (C) essentially prohibits a discriminatory tax rate as between air carrier property and other commercial and industrial property.

Airlines cite us to *Arizona Public Service Co. v. Sneed,* 441 U.S. 141, 99 S.Ct. 1629, 60 L.Ed.2d 106 (1979). Their reliance is misplaced. The factual situation is totally incomparable. Also, the federal statute,

15 U.S.C. § 391, which preempts the right of the state to tax electrical generation and transmission, is entirely different than the federal statutes under consideration herein. Likewise, *Aloha Airlines v. Director of Taxation of Hawaii*, 464 U.S. 7, 104 S.Ct. 291, 78 L.Ed.2d 10 (1983), is distinguishable as dealing with a gross receipts tax which is a form of "head tax" prohibited by 49 U.S.C. § 1513(a), an entirely different section than we are discussing here.

It is airlines' contention that the tax runs afoul of (d)(1) because the airlines, along with other centrally assessed businesses, are taxed on their personal property, whereas locally assessed commercial and industrial businesses are not.[2] On its face, it appears to be a reasonable argument, but when one looks at the clear wording of the statute, it fails. Commercial and industrial property as used in (A) and (C) is defined to mean property, other than transportation property and land used for agricultural purposes or timber growing, devoted to a commercial or industrial use and *subject to a property tax levy.* 49 U.S.C. § 1513(d)(2)(D). The locally assessed personal property, being exempt from property tax levy, cannot be included as commercial or industrial property for comparison under either (A) or (C).

The prohibition in (d)(1), with one exception, is almost verbatim to the prohibition found in federal legislation dealing with railroads and motor vehicles under the Revised Interstate Commerce Act of 1978 and the earlier Railroad Revitalization and Regulatory Reform Act of 1976, 45 U.S.C. § 801 et seq. (4–R Act). The 4–R Act was discussed in *Atchison, Topeka & Santa Fe Ry. v. State of Ariz.*, 559 F.Supp. 1237 (D.Ariz.1983). In that case, the Arizona Constitution exempted from taxation manufacturers' inventory, a form of personal commercial property. The plaintiffs were contending that this property should nevertheless be considered as commercial and

industrial property "subject to a property tax levy" in the sense that it could be taxed if the people chose to amend the constitution. The court termed this interpretation unreasonable. It defined property subject to tax levy as property which is presently taxed. "Property which is for any reason tax-exempt is excluded as a form of commercial and industrial property." *Id.* at 1245.

The airlines cite us to the case of *Otter Tail Power v. State*, Civ. 82–3044 (D.S.D. Mar. 7, 1984), wherein the taxation of railroad cars was rejected by application of the 4–R Act. The trial court's opinion made no mention of the phrase "and subject to property tax levy." Rather, the decision followed an Eighth Circuit decision, *Ogilvie v. State Bd. of Equalization*, 657 F.2d 204 (8th Cir.), *cert. denied* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981), a case involving taxation of personal property in North Dakota and likewise relied on heavily by airlines. We find the *Ogilvie* case strongly supportive of the tax rather than the preemption of it.

*Ogilvie* dealt with both real and personal property. The issue as to the real property centered around the assessment ratio to true value as between the centrally assessed railroad property and the locally assessed commercial and industrial property of other businesses. That is not relevant here. The second issue, however, is very much in point and in our opinion supports the imposition of the tax in this case.

*Ogilvie* was concerned with the preemption by the 4–R Act of North Dakota's imposition of taxes on railroad property. As we have noted before, the 4–R Act, with one exception, is almost verbatim with § 1513(d)(1). At this point, that exception looms large. Section 1513(d)(1) sets out three prohibitions comparable to the first three prohibitions in the Revised Interstate Commerce Act, 49 U.S.C. § 11503, and the 4–R Act, § 306. The latter two acts, how-

---

**2.** The airlines enjoy the same exemption on the balance of their personal property, which was locally assessed, as do the other commercial and industrial businesses.

ever, also contain a fourth prohibition, "the imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part."

It is noteworthy that the 4–R Act was enacted in 1976 and the Revised Interstate Commerce Act in 1978. In 1982, Congress, in enacting § 1513(d)(1), while following closely the first three sections of the earlier acts, omitted any reference to the fourth.

In *Ogilvie*, at the trial court level, 492 F.Supp. 446 (D.N.D.1980), the trial judge first determined that the inclusion of personal property and trade fixtures in the assessed value of railroad property does not violate § 306(1)(a), (b), or (c) (the prohibitions similar to § 1513(d)(1)). With respect to (a), the prohibition of a higher assessment ratio, he determined that the inclusion of the locally assessed personal property would affect the total assessed value but not the assessment ratio.[3] Thus, of course, a levy and collection of a tax assessed under (a) would not violate (b). As to (c), the trial court engaged in the same reasoning as the court did in *Atchison, Topeka & Santa Fe, supra,* holding that "the personal property of locally assessed businesses is not commercial and industrial property for purposes of § 30[6](1)(c) for § 306(3)(c) defines commercial and industrial property as property 'which is subject to a property tax levy.'" 492 F.Supp. at 453. He held that locally assessed personal property is not commercial and industrial property because it is not subject to a property tax levy and, therefore, not comparable to transportation personal property to determine whether § 306(1)(c) has been violated.

The trial court then went on to find that the North Dakota tax scheme ran afoul of the fourth prohibition in § 306, the "any other tax" provision, which is not found in § 1513(d)(1). The court first reasoned that

since the tax sought to be imposed did not fall under the preceding sections it was, therefore, encompassed within the term "any other tax." It went on to determine that it was discriminatory and concluded that it violated § 306(1)(d).

The Eighth Circuit stated in *Ogilvie* that "the district court properly interpreted both the language and intent of § 306." 657 F.2d at 210. The decision therefore supports the decision of Judge Jones in *Otter Tail Power, supra,* and the decision of this court in *Montana-Dakota Util. v. S.D. Dept. of Rev.,* 337 N.W.2d 818 (S.D. 1983), both railroad cases, as well as the decision of this court to hold that § 1513(d)(1) does not preempt the airline flight property tax.

We affirm the judgment of the trial court.

.

FOSHEIM, C.J., WOLLMAN, J., and WUEST, Circuit Judge, acting as a Supreme Court Justice, concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part, dissenting in part).

Although I agree with the majority's ruling on the in lieu arguments, I dissent on the imposition of the tax which is the crucial holding of the majority opinion.

Congress' intent in enacting 49 U.S.C. § 1513(d) was "to prohibit discriminatory property taxes imposed on air carriers." *Aloha Airlines v. Director of Taxation,* 464 U.S. 7, ——, 104 S.Ct. 291, 293, 78 L.Ed.2d 10, 13 n. 3 (1983). *See also* the letter from the United States Senate Committee on Commerce, Science, and Transportation, dated December 21, 1982, attached hereto and by this reference incorporated herein, which clearly reflects that the purpose of the act "is to prevent the

---

**3.** This is an alternate theory to the one we adopt, but we nevertheless find it highly persuasive.

continued discrimination of ad valorem taxation of airline flight property." That Congress has the authority to so control state taxation of air carriers in interstate commerce is beyond question. *See Arizona Public Service Co. v. Snead*, 441 U.S. 141, 150, 99 S.Ct. 1629, 1634, 60 L.Ed.2d 106, 113 (1979). Congress' authority to so regulate is derived from the Commerce Clause of the United States Constitution and it is axiomatic that when a federal statute forbids state imposition of a tax, the state statute imposing the tax is preempted. *Aloha Airlines*, 464 U.S. at ——, 104 S.Ct. at 294, 78 L.Ed.2d at 15.

The majority, however, determines that 49 U.S.C. § 1513(d) does not preempt the airline flight property tax imposed by SDCL ch. 10–29. The majority's rationale is that because locally assessed personal property is exempt from a property tax levy, it is not commercial or industrial property *subject to a property tax levy* under 49 U.S.C. § 1513(d)(2)(D), and thus, it cannot be used for discriminatory ratio or rate comparisons.

Such a construction of 49 U.S.C. § 1513(d) was recently rejected by the Supreme Court of North Dakota in *Northwest Airlines v. State Bd. of Equalization*, 358 N.W.2d 515 (N.D.1984), and I accept the reasoning advanced therein over that of the present majority. Chief Justice Erickstad, in addressing an assertion by the State similar to the majority's rationale herein, wrote for a unanimous court that: "The construction urged by the State would allow discriminatory taxation of air carrier transportation property as long as a state imposed no tax at all on other commercial and industrial property. We cannot reasonably so construe the statute." *Id.*, 358 N.W.2d at 517. I, too, reject such a construction of 49 U.S.C. § 1513(d). The discrimination sought to be imposed against air carriers in this state is absolute.

Personal property taxes were repealed in 1978. *See* 1978 S.D.Sess. Laws chs. 72 and 73. The State, however, through SDCL ch. 10–29, still seeks to impose a personal property tax on airline flight property while all other commercial and industrial property is exempt from personal property taxes. By enacting 49 U.S.C. § 1513(d), the United States Congress sought and intended to eliminate burdens on interstate commerce by prohibiting discriminatory state taxes imposed on air carrier transportation property. To permit, as the majority's interpretation does, the taxation of airline personal property when all other commercial and industrial personal property is exempt from taxation, is to permit a "greater discrimination when the [commercial and industrial] property is completely exempt than when it is taxed, but at a lower rate. That is unreasonable." *Id.*, 358 N.W.2d at 517. Since the level of assessment on commercial and industrial personal property is zero, the level of assessment of the airlines' personal property must be reduced to zero. "A construction which accords with reason is to be preferred to a literal construction involving a palpable absurdity." *Rice v. City of Watertown*, 66 S.D. 221, 223, 281 N.W. 116, 117 (1938).

"[A]ssessing and taxing the Airlines' personal property while exempting other commercial and industrial personal property from taxation is prohibited by 49 U.S.C. § 1513(d)." *Northwest Airlines*, 358 N.W.2d at 517. I would reverse the circuit court and rule that 49 U.S.C. § 1513(d) forbids the taxes imposed by SDCL ch. 10–29, and thus the latter is preempted by federal law.

United States Senate

COMMITTEE ON COMMERCE, SCIENCE, AND TRANSPORTATION

WASHINGTON, D.C. 20510

December 21, 1982

Mr. Paul R. Ignatius
President
Air Transport Association of America
1709 New York Avenue, N.W.
Washington, D.C. 20006

Dear Mr. Ignatius:

You have requested, on behalf of your airline members, clarification of the legislative intent of Section 532 of the Tax Equity and Fiscal Responsibility Act of 1982 (the "Act") concerning the assessment, levying or collecting of ad valorem flight property taxation of airline companies.

The purpose of the Act is to prevent the continued discrimination of ad valorem taxation of airline flight property. However, the Act must be interpreted in a manner that recognizes that all states do not have the same timetable for assessing and collecting such taxes. It was not intended to require a state to refund property taxes which have been levied and collected prior to the effective date of the Act, September 3, 1982.

The legislative intent is supported by Subparagraphs (B) and (C) of the Act which provide that relief from discriminatory assessments must be made when the taxes have not been actually levied and collected before the effective date of the Act. Furthermore, the purpose of Subparagraph (A) was to preclude discriminatory assessments, in the event they had not been made by September 3, 1982.

Unless a state has levied and collected discriminatory ad valorem flight property taxes on airline companies before September 3, 1982, that method of taxation should not be in effect during 1982.

Sincerely,
/s/ Norman Y. Mineta
/s/ Bob Packwood
/s/ Nancy Landon Kasselbaum
/s/ Howard W. Cannon