**Jack SEYMOUR, Appellant,**

**v.**

**WESTERN DAKOTA VOCATIONAL TECHNICAL INSTITUTE and Rapid City Board of Education, Appellees.**

**No. 15705.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 1987.

Decided Feb. 10, 1988.

Thomas E. Brady of Richards, Hood & Brady, P.C., Spearfish, for appellant.

Thomas E. Simmons of Bangs, McCullen, Butler Foye & Simmons, Rapid City, for appellees.

WUEST, Chief Justice.

Appellant, Jack Seymour, appeals a circuit court decision affirming his employer's decision to terminate his employment. We affirm.

Appellant was an instructor, farm supervisor and department head at Western Dakota Vocational Institute, a post-secondary vocational-technical school governed by SDCL ch. 13–39. His employment contract made him responsible for purchasing supplies, feed and seed for the farm program. In December, 1984, appellant began doing business as J & S Cattle Company. Later that month, the appellant purchased fourteen stacks or one hundred ninety tons of alfalfa at $55.00 a ton. Several days later, appellant sold 27.2 tons of alfalfa to the Institute at $65.00 a ton. The Institute paid J & S Cattle Company for this hay.

On February 12, 1985, the co-directors of the Institute notified appellant they would make a recommendation to the Institute Board he be dismissed for reason of his personal interest in the school's purchase of the hay. After a hearing the Institute Board found appellant's conduct constituted a violation of his professional ethics, a violation of South Dakota law, and a plain violation of his contract. The Board dismissed the appellant pursuant to SDCL 13–43–15 for plain violation of contract and flagrant neglect of duty.

On appeal to circuit court, appellant argued the Board erred in finding he had breached his employment contract. The trial court disagreed.

In the memorandum opinion incorporated by the trial court into its findings of fact and conclusions of law, the court held that the appellant should be considered a "public officer" for purposes of SDCL 3–16–7. The court stated:

It is. the duties of the department head and farm supervisor which contemplate that he will use discretion with the money and property which are entrusted to his care. It is the finding of this Court that his duties as a department head and supervisor were such that he would be deemed a public officer.

As a "public officer," the court found the appellant violated SDCL 3–16–7, which provides:

Every public officer, being authorized to sell or lease any property or make any contract in his official capacity, who voluntarily becomes interested individually in such sale, lease or contract, directly or indirectly, is guilty of a class 2 misdemeanor.

The court then held by violating the provisions of SDCL 3–16–7, the appellant had breached his employment contract, which in pertinent part provided:

The party of the first part is to perform all duties assigned by the party of the second part under the supervision of its Director and in accordance with the provisions of *the laws of the State of South Dakota, school policy and administrative regulations and all administrative directives relating to the duties of the party of the first part.* (Emphasis supplied).

. . . .

The contracting Board upon the recommendation of the Cooperative Board may dismiss any teacher *at any time for violation of contract, gross immorality,* incompetence, flagrant neglect of duty, *unprofessional conduct,* or failure to comply with an order as issued by the Board through the Director and not in conflict with terms of the contract. (Emphasis supplied).

Appellant contends the court erred in determining he was a "public officer" for purposes of SDCL 3–16–7.

The question whether a person holding a public position is a "public officer" or merely a public "employee" is primarily

one of statutory powers and duties. *Griggs v. Harding County*, 68 S.D. 429, 3 N.W.2d 485 (1942). Whether a person holds a "public office" rather than mere employment does not depend upon what the particular office in question may be called, but upon the "power granted and willed, the duties and functions performed, and other circumstances which manifest the true character of the position and make and mark it a public office, irrespective of its formal designation." *Griggs*, 68 S.D. at 432, 3 N.W.2d at 487.

It may be stated, as a general rule deducible from the cases discussing the question, that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements.

*Griggs*, 3 N.W.2d at 486.

The criteria outlined in *Griggs* are the same as those generally appearing in the other authorities that discuss the officer/employee distinction.

Among the criteria to be considered in determining whether a position is an office or a mere employment are whether the position was created by law; whether the position was designated [as] an office; whether the qualifications of the appointee have been prescribed; whether the duties, tenure, salary, bond and oath have been prescribed or required; and whether the one occupying the position has been constituted a representative of the sovereign. (Citations omitted).

*Graf v. Frame*, — W.Va. —, 352 S.E.2d 31 (1986). *See also* 67 C.J.S. Officers, §§ 3 & 4 (1978).

The authorities generally recognize that how the position is created is an important consideration.

Generally, one of the requisites of an office is that it must be created by a constitutional or statutory provision, or by a municipality or other body through authority conferred by the legislature. Thus, an important distinction between the status of an officer and that of an employee rests on the fact that an office is created by, and based on, some provision of law, and does not arise out of contract, whereas an employment, although it may be created by law, usually arises out of a contract between the government and the employee; and, where authority is conferred by contract, it is regarded as as employment, and not as a public office, notwithstanding provision for the employment is made by statute.

67 C.J.S. Officers, § 9 (1978).

In *Christopher v. City of Fairmont*, 167 W.Va. 710, 280 S.E.2d 284 (1981), the West Virginia Supreme Court held that a city supervisor was a public employee rather than a public officer.

As a general rule it may be stated that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which are continuing in their nature and not occasional or intermittent. *But one who merely performs the duties required of him by persons employing him under an express or implied contract, though such persons themselves be public officers, and though the employment be in or about public work or business, is a mere employee.* (Emphasis supplied).

*Christopher*, 280 S.E.2d at 285, *quoting State ex rel. Key v. Bond*, 94 W.Va. 255, 260, 118 S.E. 276, 279 (1923).

■ It is clear appellant's position is not that of a public officer. Neither appellant's position or the duties of that position are created or prescribed by law. His position and duties were created by contract. Appellant was not elected or appointed to his position. Nor did he exercise any sovereign function of government. Thus, he does not fit the definition of public officer and the trial court erred in so holding.

However, the appellant was also terminated by the Board for a violation of ethics.

In its findings and decision, the Institute board found it had adopted the American Vocational Association Code of Ethics, July, 1978, which states in part that:

The vocational educator:

3. Bases professional action and decisions upon sound, objective rationale without influence of favors, gifts, or personal or political advantage.

We hold the sale of the alfalfa to the Institute whereby appellant made a profit of $10.00 per ton was a violation of ethics and the Board was correct in so finding. This breach of ethics was unprofessional conduct for which he could be terminated "at any time." Although the trial court may have upheld the Board's decision for the wrong reason, we will not overturn a right result even though it is based on a wrong reason. *Holmes v. Miller*, 71 S.D. 258, 23 N.W.2d 794 (1946). *See also Western Airlines, Inc. v. Hughes County*, 372 N.W.2d 106 (S.D.1985); *South Dakota Medical Services v. Minnesota Mutual Fire and Casualty Co.*, 303 N.W.2d 358 (S.D.1981); *Owens v. City of Beresford*, 87 S.D. 8, 201 N.W.2d 890 (1972).

On appeal to this court, appellant again argues he was wrongfully terminated because the Institute allegedly did not follow its procedure when it dismissed him. We disagree. As the trial court noted, since the separation from employment agreement provided for dismissal *at any time* for unprofessional conduct, the Board could properly use the procedure it did.

The decision of the Institute Board and the decision of the trial court are therefore affirmed.

HENDERSON, J., specially concurs.

MORGAN and SABERS, JJ., concur in result.

MILLER, J., deeming himself disqualified, did not participate.

HENDERSON, Justice (specially concurring).

In reviewing the facts of this case, it becomes quite evident that Seymour was not only a teacher, he was also a department head and farm supervisor entrusted with the duty and responsibility of spending money on behalf of his employer, the Institute. Therefore, he was wearing two hats.

Whatever hat he was wearing, he was acting as a public employee and he plainly violated his contract in that he was involved in a classic case of self-dealing.

In reviewing the circuit court's decision, I am convinced that the circuit court recognized the two hats which Seymour could wear theoretically and the third one which he tried to wear, whereby he plainly violated his contract and committed a flagrant neglect of duty. The Board of the Institute dismissed Seymour for plain violation of contract and flagrant neglect of duty. Thus, the Board and the circuit court has an absolute meeting of the minds.

In my opinion, both the Board and the circuit court judge have sustainable positions in law. I am not so taken up with the majority opinion's "ethics theory" as by the rationale of the decisions of the Board and the circuit court.

Furthermore, I ground my writing in the old concept in this Court that we must find the findings of fact to be clearly erroneous. They are not; and the conclusions of law of the trial court are not mistakes of law; thus, under our oft-quoted rule, now more particularized in *Permann v. South Dakota Dep't of Labor*, 411 N.W.2d 113 (S.D. 1987), the circuit judge should not be reversed.

Lastly, I set forth the dismissal provision of the contract:

DISMISSAL

The contracting Board upon the recommendation of the Cooperative Board may dismiss any teacher at any time for violation of contract, gross immorality, incompetence, flagrant neglect of duty, unprofessional conduct, or failure to comply with an order as issued by the Board

through the Director and not in conflict with terms of the contract.

Seymour took advantage of his position and profiteered against our state law. SDCL 3–16–7. When he was acting as a farm manager and chairman of the Agricultural Technology Department, receiving extra compensation for these positions, he occupied a position of public trust and employment. *See* SDCL 3–16–1. Under SDCL 6–1–1, Seymour's sale of alfalfa to the Institute was "null and void from the beginning." In all of the legal premises, I would sustain the circuit court.

MORGAN, Justice (concurring in result).

I concur in the result. It appears to me that Seymour is an officer of the Western Dakota Vocational School. However, rather than relying on SDCL 3–16–7, which deals with officers in general, I would so hold under the provisions of SDCL 6–1–1, which provides, in pertinent part:

It shall be unlawful for any officer of a county, municipality, township or *school district*, who has been elected or *appointed*, to be interested ... in any contract entered into by said ... school district ... for the purchase of commodities, materials, supplies, or equipment of any kind, the expense, price or consideration of which is paid from public funds.... (Emphasis added.)

SDCL 6–1–2 does provide for certain exceptions to the foregoing, but this transaction does not fall within any of them. I agree with the trial court that Seymour's position as a department head and supervisor were such that he would be deemed a public officer as opposed to merely an employee.

Furthermore, I would distinguish *Griggs v. Harding County*, 68 S.D. 429, 3 N.W.2d 485 (1942), relied on by the majority, because it involves a workman's compensation claim and only purports to define public official for the purposes of workman's compensation claims under SDC 64.-0102(2)(b) (now SDCL 62–1–3(2)). Inasmuch as Seymour is not a worker's compensation claimant, I would distinguish *Griggs*.

I would hold that the trial court arrived at the correct decision for the wrong reason, specifically it relied on SDCL 3–16–7 rather than on SDCL 6–1–1.

SABERS, Justice (concurring in result).

I concur in the result only. I would affirm the trial court's result and its reasons. Seymour's duties and functions were clearly those of a public officer even under the authority cited and relied upon by the majority. *Griggs v. Harding County*, 68 S.D. 429, 3 N.W.2d 485 (1942).

Seymour was a "public officer" with respect to his duties and functions as farm manager, even if he was only paid $200 over regular teacher pay. He "voluntarily" became "interested individually" in the school's "contract" and violated SDCL 3–16–7. He also violated SDCL 6–1–1. As such, he was properly discharged for the right reasons.